* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with some modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On the date of injury, the parties were subject to the provisions of the North Carolina Workers Compensation Act. *Page 2 
2. An employment relationship existed between the plaintiff and defendant-employer.
3. The insurer for defendant-employer is Broadspire Insurance Company.
4. On or about November 15, 2001, plaintiff was involved in a rear-end collision. As a result of said collision plaintiff did incur certain medical expenses arising out of and in the course of his employment.
5. Defendants filed a Form 60 on or about October 14, 2004 wherein defendants admitted plaintiff's right to medical compensation.
6. Defendants filed a Form 61 on or about October 14, 2004, wherein defendants contended that certain medical treatment, particularly plaintiff's dental work, his hip and back conditions are not related to his compensable injury.
7. Subsequent to the hearing, by letter dated October 21, 2005, the parties stipulated to plaintiff's average weekly wage of $710.10 and plaintiff's compensation rate of $473.46.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-seven years old.
2. On November 15, 2001, defendant-employer hired plaintiff as an extra route salesman. Plaintiff's duties required him to drive a vehicle and deliver bread and other items to grocery stores. On November 15, 2001, in the course of performing his regular duties for *Page 3 
defendant-employer while en route to Wal-Mart to deliver bread, plaintiff was hit from behind by another vehicle.
3. A review of the evidence of record, including the body shop repair estimate and plaintiff's testimony at the hearing before the Deputy Commissioner, reveals that plaintiff's vehicle was hit hard in its center rear on November 15, 2001, causing the need for major repairs.
4. The impact to plaintiff's vehicle caused his head and body to be jerked backward and forward. At the hearing before the Deputy Commissioner, plaintiff testified that he hit the back of his head but was not certain if he also hit the steering wheel. Immediately after impact, plaintiff noticed that his two front teeth were chipped. By the next day, plaintiff felt sore over his entire body.
5. Plaintiff worked the day immediately following the accident and then for approximately four hours the next day even though he was sore and aching. On November 19, 2001, plaintiff presented to the Emergency Room at Wilson Memorial Hospital with pain over his whole left side, specifically, in his neck, arm, hip, and leg. Plaintiff reported that he sustained his injuries in a motor vehicle accident four days earlier on November 15, 2001. The doctor who examined plaintiff at the Emergency Room took him out of work for several days due to his complaints of pain and according to plaintiff's testimony at the hearing before the Deputy Commissioner, referred him to Dr. Tom S. Rand at Wilson Orthopaedic and Neurology Center.
6. Conservative treatment did not resolve plaintiff's complaints so on April 28, 2003, Dr. Miller, an orthopedic surgeon, performed a sacroiliac fusion on plaintiff. Dr. Miller had been treating plaintiff regarding his back, hip and leg injuries resulting from plaintiff's November 15, 2001 motor vehicle accident since March 7, 2002 and had taken plaintiff out of *Page 4 
work for some time prior to this surgery. Following plaintiff's April 28, 2003 surgery, Dr. Miller restricted plaintiff from working until approximately August 11, 2003.
7. The evidence of record reveals that plaintiff had previously been taken out of work or placed on light duty restrictions including, but not limited to the following dates:
 • Plaintiff was placed on light duty restrictions on November 28, 2001 for four (4) weeks;
 • Plaintiff was again taken out of work from January 25, 2002 until February 4, 2002;
 • Plaintiff was taken out of work on March 19, 2002 until April 22, 2002.
8. The deposition testimony of Dr. David Miller was taken in this matter. Dr. Miller opined to a reasonable degree of medical certainty, that the injuries for which he treated plaintiff and the pain plaintiff was experiencing were secondary to plaintiff's November 15, 2001 motor vehicle accident. Dr. Miller further testified that he released plaintiff to return to work to normal duty on August 11, 2003. Dr. Miller assigned a twelve percent (12%) rating to plaintiff's spine.
9. Plaintiff also presented to Dr. Charles Ferzli and Dr. B. Scott Via, dentists, regarding his dental problems subsequent to the November 15, 2001 accident.
10. Dr. Ferzli examined plaintiff on two occasions. In his deposition testimony, Dr. Ferzli offered no opinion regarding whether plaintiff's November 15, 2001 motor vehicle accident was related to his dental problems.
11. Plaintiff presented to Dr. Via on numerous occasions. Dr. Via performed dental work on plaintiff's teeth following his November 15, 2001 motor vehicle accident. Dr. Via testified that he placed crowns on five of plaintiff's teeth (numbers 7, 8, 9, 24 and 25). Dr. Viar *Page 5 
opined that the dental work he performed on these teeth was related to plaintiff's November 15, 2001 motor vehicle accident.
12. Plaintiff continued to receive medical treatment for his injuries by Dr. David Miller, an orthopedic surgeon, Dr. B. Scott Via, D.M.D., a dentist, and Dr. Charles Ferzli, D.D.S., another dentist.
13. At the hearing before the Deputy Commissioner, defendants offered no medical evidence to contradict or dispute the medical evidence presented. Based on the competent evidence of record, the Full Commission finds plaintiff's November 15, 2001 motor vehicle accident caused plaintiff's subsequent hip, low back, neck, left arm, left leg, and dental problems for which he received medical treatment.
14. On January 14, 2002, defendants filed an Industrial Commission Form 19, Employer's Report of Employee's Injury to the Industrial Commission, which was dated December 21, 2001. This form indicated that defendants first knew of plaintiff's November 15, 2001 motor vehicle accident on the day it occurred. This form also stated that plaintiff's disability from his November 15, 2001 motor vehicle accident began on November 17, 2001 and that plaintiff had returned to work with defendant-employer on November 29, 2001. Based on N.C. Gen. Stat. §97-92, defendants should have filed this form within five days after the occurrence and knowledge of the injury to plaintiff causing his absence from work for more than one day or when medical expenses exceeded an amount set by the Industrial Commission.
15. Defendants were also required to file a Form 60 Employer's Admission of Employee's Right to Compensation or in the alternative, a Form 61, Denial of Workers' Compensation Claim. *Page 6 
16. On October 14, 2004, nearly three years after plaintiff's injury by accident on November 15, 2001, defendants did file a Form 60 Employer's Admission of Employee's Right to Compensation. However, defendants did not initiate the payment of any indemnity compensation to plaintiff. Although defendants did provide some medical treatment for plaintiff following the November 15, 2001 accident, after September 11, 2002, defendants unilaterally denied plaintiff any further medical compensation.
17. On October 14, 2004, defendants also filed a Form 61 Denial of Workers' Compensation Claim in which they denied the compensability of some of the consequences of plaintiff's injuries. Specifically, defendants contended that plaintiff's dental work and his hip and back conditions were not related to his compensable injury by accident on November 15, 2001. The filing of the Form 60 and Form 61 contemporaneously for the same claim appeared contradictory and thus was confusing.
18. Although defendants denied some of the compensable consequences of plaintiff's injury with the filing of the Form 61, defendants have never denied plaintiff suffered a compensable injury, thus defendants were required to file a Form 60. If defendants had originally filed a Form 60 and later disputed plaintiff's entitlement to indemnity benefits, defendants could have filed an Industrial Commission Form 24 Application to Terminate or Suspend Payment of Compensation application pursuant N.C. Gen. Stat. § 97-18.1 and Industrial Commission Rule 404.
19. Although defendants could also have filed an Industrial Commission Form 63, Payment of Compensation without Prejudice pursuant to N.C. Gen. Stat. § 97-18(d), they chose not to timely file any prescribed forms, which would have provided the Industrial Commission and plaintiff notice of their acceptance or denial of the claim. *Page 7 
20. At the hearing before the Deputy Commissioner, plaintiff testified that since defendants did not commence indemnity compensation to plaintiff, he was forced to use all of his vacation time and to apply for what plaintiff thought to be "family medical leave." Plaintiff also testified that he was forced to return to work with defendant-employer while still on a medical out-of-work status as he had no compensation and was afraid that he would lose his job.
21. The Full Commission finds that defendants' failure to make compensation payments to plaintiff when due was unjustified and warrants the mandatory imposition of a ten-percent (10%) penalty pursuant to N.C. Gen. Stat. § 97-18 (g).
22. In view of the totality of the evidence and the specific and unique facts of this case, the Full Commission finds defendants' prosecution of this matter was based on unfounded litigiousness.
23. Any rights defendants may have regarding the pursuit of a third-party subrogation lien in this matter is controlled by N.C. Gen. Stat. § 97-10.2.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on November 15, 2001, which resulted in injuries to his low back, hip, left arm, left leg, and teeth. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate consequence of his compensable injury by accident, plaintiff is entitled to temporary total disability compensation at a rate of $ 473.46 per week commencing November 19, 2001, and for the subsequent dates to be determined from *Page 8 
defendants' payroll records when plaintiff was taken out of work due to his November 15, 2001 resulting injuries until August 11, 2003, when Dr. Miller returned plaintiff to normal work duties. N.C. Gen. Stat. § 97-29).
3. Defendants failed to make compensation payments to plaintiff when due within the time required and, as a result, the mandatory imposition of the 10% penalty is required. N.C. Gen. Stat. § 97-18(g).
4. As a direct and proximate consequence of his compensable injury by accident, plaintiff is entitled to permanent partial disability benefits for his twelve percent (12%) permanent partial disability to his spine at a rate of $473.46 per week for a thirty-six (36) week period. N.C. Gen. Stat. § 97-31.
5. Plaintiff is entitled to have defendants provide all medical treatment incurred or to be incurred as a result of his compensable injuries on November 15, 2001, as may be reasonably required to effect a cure, provide relief or lessen the period of disability, including his April 28, 2003 surgery, dental treatment and expenses and his visits to Dr. Miller. N.C. Gen. Stat. § 97-25.
6. Upon failure to comply with the Rules of the Industrial Commission or failure to timely file forms as required by the Rules or Statutes, the Industrial Commission may subject the violator to fines, attorney fees or other appropriate sanctions. Rule 802 of the Workers' Compensation Rules of the North Carolina Industrial Commission.
7. Pursuant to N.C. Gen. Stat. § 97-88.1, the Industrial Commission is authorized to assess attorney's fees in any case either prosecuted or defended without reasonable ground. The purpose of this section is "to prevent stubborn, unfounded litigiousness which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to injured *Page 9 
employees." Troutman, 121 N.C. App. at 48. Defendants' defense of this claim was based upon unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
8. In that defendants failed to file a Form 60 admitting liability for this claim or a Form 61 denying liability until October 14, 2004, they did not comply with the Workers' Compensation Act or Industrial Commission Rules and are subject to sanctions. N.C. Gen. Stat. § 97-18
(b); Rules 103 and 802, Workers' Compensation Rules of the North Carolina Industrial Commission.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee hereinafter approved, defendants shall pay to plaintiff temporary total disability benefits at the compensation rate of $473.46 from November 19, 2001 and during the dates following when plaintiff was taken out of work due to his November 15, 2001 injuries until August 11, 2003, when Dr. Miller returned plaintiff to normal work duties. Compensation that has accrued shall be paid in a lump sum also subject to the attorney's fee.
2. The compensation presently due to plaintiff under Paragraph 1 of this Award shall be paid in a lump sum and is subject to a 10% penalty imposed pursuant to N.C. Gen. Stat. § 97-18(g), and is also subject to the attorney's fees approved below.
3. Subject to the attorney's fee hereinafter approved, defendants shall pay plaintiff permanent partial disability compensation for his twelve percent (12%) rating to his spine at a rate of $ 473.46 per week for a thirty-six (36) week period. This amount is due and payable and shall be paid in a lump sum. *Page 10 
4. Plaintiff is entitled to have defendants provide all medical treatment incurred or to be incurred as a result of his compensable injury on November 15, 2001, as may be reasonably required to effect a cure, provide relief or lessen the period of disability, including his April 28, 2003 surgery, dental evaluations, treatment and expenses and his visits to Dr. Miller. N.C. Gen. Stat. § 97-25.
5. As sanctions for defendants' unreasonable defense of this claim, defendants shall pay directly to plaintiff's counsel attorney's fees in an amount equal to twenty-five percent (25%) of plaintiff's benefits, unless defendants have already paid said sanction. Accordingly, if said sanction has not been paid by defendants to plaintiff's counsel, defendants shall forward directly to plaintiff's counsel, as his fee, an amount equal to twenty-five (25%) of the accrued benefits owed to plaintiff. This amount shall not be deducted from plaintiff's benefits.
6. Defendants are fined $ 25.00 for their failure to timely file an I.C. Form 19. N.C. Gen. Stat. § 97-92 (e) and N.C.I.C. Rule 802 (2).
7. Defendants shall pay sanctions in the amount of $3,000.00 to the Industrial Commission for failure to timely file a Form 60 or Form 61.
8. Defendants shall pay the costs.
This the __ day of May 2007.
 S/_______________________ PAMELA T. YOUNG COMMISSIONER
 CONCURRING: *Page 11 
 S/_______________________ BUCK LATTIMORE CHAIRMAN
 S/_______________________ DIANNE C. SELLERS COMMISSIONER